### In the Matter of the WELFARE OF D.S.N., Child.

#### No. C1–99–1493.

Court of Appeals of Minnesota.

June 2, 2000.

### Peggy Sue AVERY, Relator,

v.

### FARMSTEAD FOODS/SEABOARD CORPORATION and The Hartford, Respondents,

and

### O R D E R

John M. Stuart, State Public Defender, Charlann E. Winking, Assistant Public Defender, Minneapolis, for appellant D.S.N.

Mike Hatch, Attorney General, St. Paul, and Roger S. Van Heel, Stearns County Attorney, Sam D. Young, Assistant County Attorney, St. Cloud, and Walter Kaminsky, Sherburne County Attorney, Elk River, for respondent.

Considered and decided by SHUMAKER, Presiding Judge, CRIPPEN, Judge, and KLAPHAKE, Judge.

## OPINION

CRIPPEN, Judge

Appellant challenges the trial court adjudication that he committed second-degree burglary, contending that his statements to police should have been suppressed as involuntary due to threats and promises of a police officer. Because the record requires a conclusion that appellant's statements were not voluntary, we reverse.

## FACTS

Adjudicating appellant's offense, following a trial, the trial court found that appellant entered a home without consent, took cash and electronic items valued at approximately $560, and caused damages of approximately $50 to the window that was broken to gain entry.

The principal incriminating evidence at trial was the statement appellant gave to police in November 1997. His motion to suppress this statement was denied by the trial court in a proceeding held in December 1998.

Appellant was almost 17 years old at the time of his statement to police. He did not have extensive experience with the criminal justice system; his criminal history consisted only of petty offenses, including misdemeanor theft, curfew violation, and minor consumption.

The police questioned appellant three days after he and others were seen carrying items that were later identified as the stolen property. Appellant was questioned at the police station, with his mother present, and the conversation was recorded. During this conversation, the police promised appellant that if he confessed he could go home that evening with his mother, but that if he did not confess he would be shipped away to a secure detention facility for several days. Appellant was also told, in a conversation stating how he would pay for an uncooperative attitude, that the court could "ship you away" and could certify him to face adult trial and punishment for a burglary offense. Appellant confessed to the burglary, his subsequent suppression motion was denied, and after a trial he was adjudicated delinquent.

## ISSUES

1. Did the trial court err in denying appellant's motion to suppress his statements to police?

2. Is there cause for continued court jurisdiction in this case?

## ANALYSIS

**1. Suppression of the statements.**

A confession is admissible only if it was freely and voluntarily given. *State v. Riley*, 568 N.W.2d 518, 525 (Minn.1997). Where a defendant seeks to suppress a confession on the grounds that it was involuntary, the state bears the burden to prove the voluntariness of the confession "by a fair preponderance of the evidence."

*State v. Thaggard,* 527 N.W.2d 804, 807 (Minn.1995). This court is not bound by the trial court's decision as to whether or not the confession was voluntary; this court independently determines, "on the basis of all factual findings that are not clearly erroneous, whether or not the confession was voluntary." *Id.*

A juvenile's confession is regarded as voluntary, "if the totality of the circumstances show that the statement was the product of a free-will decision." *Welfare of G.M.,* 560 N.W.2d 687, 696 (Minn.1997) (citations omitted). We must look to all relevant factors in determining the voluntariness of the confession, including the defendant's age, maturity, intelligence, education, experience and ability to comprehend; length and legality of the detention; lack of, or adequacy of a warning; the nature of the interrogation; and whether the defendant was deprived of physical needs. *Thaggard,* 527 N.W.2d at 808.

We are mindful that the police "proceed on thin ice and at their own risk" when they use deception or trickery to obtain a confession. *Thaggard,* 527 N.W.2d at 810. Although the police "invite suppression * * * when they use promises, express or implied," we observe also, provided that the promises did not rise to the level of non-prosecution, that the use of deceit or promises does not automatically render a confession involuntary. *See id.* at 811. Promises of favorable treatment invite suppression and have led to suppression where, given the total circumstances, hope is implanted for escaping punishment. *See State v. Anderson,* 404 N.W.2d 856, 858 (Minn.App. 1987) (confession involuntary where police representations to 20–year–old implied defendant would receive treatment, rather than prosecution, if he confessed), *review denied* (Minn. June 25, 1987); *see also State v. Gard,* 358 N.W.2d 463, 468 (Minn.

App.1984) (confession involuntary where police implied no charges would be brought, and defendant would instead receive counseling, if the defendant confessed); *State v. Biron,* 266 Minn. 272, 282, 123 N.W.2d 392, 399 (1963) (confession involuntary where police statements and representations to 18–year–old were persuasive and "could only have had the effect of implanting" the hope that he would be treated as a juvenile or charged with a lesser crime).

Appellant was not subjected to any deprivations, the interrogation lasted only a short time, he received *Miranda* warnings, and the trial court found he was a "typical 17 year old."[1] These factors all lend support for use of his confession, but they are overwhelmed by other facets of the record in this case. It is evident that appellant had little experience with the criminal justice system. And the record does not permit us to minimize the magnitude of the threats and promises made to appellant by the police. Finally, the record shows the clouding of the circumstances of interrogation by evidence that the police disregarded appellant's evident choice to remain silent.

The presence of a parent during questioning is a factor that may weigh in favor of admissibility. *See G.M.,* 560 N.W.2d at 696. Although appellant's mother was present, her presence was of little impact in light of the facts that she had a passive role, was seemingly compliant with police, and was herself seemingly confused about the consequences of a confession. Adding to the difficulty in attributing the mother's judgment to her son, the police employed her presence to the end of obtaining appellant's confession, representing to appellant that his mother was someone whom appellant had to impress to win leniency from the police. In addition, the record indicates that, just as

---

1. At the time of the police interview, appellant was approximately one week shy of his 17th birthday.

police officers evidently disregarded appellant's attempt to exercise his right to remain silent, they later disregarded appellant's mother's interest in talking to lawyer, stated after appellant had made many of the incriminating statements.

■ The police in this case clearly promised appellant that if he told the "truth," as the police officers saw the truth, they would allow him to go home rather than face secure detention for days. This promise was stated so clearly that appellant expressly viewed the discussion as a negotiation, an offer that if he talked correctly he would not be locked up and would get to go home. In fact, the officer discussed having appellant tell the "truth" as a "deal." In addition, the officer contrasted telling the "truth" with having a "hard ass attitude;" in which case appellant would face the threat that authorities would "ship" him away. The officer explained to appellant that he knew the two county attorneys who would handle the case and that they would proceed based on the officer's assessment of "what kind of guy" appellant was. Finally, adding to the seriousness of the record of duress in this case, the officers explained to appellant that he could be certified as an adult and sent to prison, stating "it's sort of like murder * * * you can go to prison for life," when there is no indication that certification was either likely or called for in this burglary case.

■ The trial court cited, and respondent cites, *State v. Jungbauer*, 348 N.W.2d 344, 346 (Minn.1984). But this case is distinguishable on the basis of the experience of the defendants. In *Jungbauer*, the defendant had had two previous felony convictions and clearly was experienced with criminal justice system. *Id.* at 346. In this case, appellant was not experienced with the criminal justice system; his previous record consisted of only petty offenses. Appellant's lack of experience with the criminal justice system weighs against finding his confession was voluntary. *See id.*; *see also Thaggard*, 527 N.W.2d at 812

(finding confession voluntary, court observes factor that defendant had prior felony convictions and thus experience with criminal justice system); *Anderson*, 404 N.W.2d at 858 (holding confession involuntary, court considers defendant's lack of experience with the criminal justice system).

Under the totality of the circumstances, we find inescapable the conclusion that appellant's confession was involuntary, coerced by the police, and must be suppressed.

**2. Court jurisdiction.**

■ The burglary in this case occurred on November 27, 1997, and appellant's statement to the police occurred on November 30, 1997. Notwithstanding the evident completion of the investigation, Stearns County authorities did not file a petition for delinquency for more than 5 months. Upon the filing of the petition, the matter was transferred to appellant's county of residence, apparently in St. Cloud, near the Stearns County boundary but in Sherburne County. Appellant's first court appearance was not until July 1998. Appellant having requested an omnibus hearing, the matter was returned to Stearns County, which did not hold the hearing until December 1998, over one year after the investigation in this matter was completed. Thereupon, an additional five-month delay occurred before the trial finally occurred in Stearns County in May 1999. Disposition on this case did not occur until July 1999, some 20 months after the offense occurred. Appellant reached adulthood on December 4, 1998, and the dispositional jurisdiction of the court expired one year later. *See* Minn. Stat. § 260.181. subd. 4(a) (1998). By December 4, 1999, appellant had evidently served a 60-day jail sentence and several months of additional probation.

The inexplicable long delays in the handling of this relatively straightforward delinquency case have removed the case from

the court's jurisdiction. The adjudication being prompted by error, we reverse and dismiss.

## DECISION

Appellant, soon to be 17, made an involuntary confession where police promised him he could go home if he confessed and threatened to send him away for several days if he did not confess, and where police otherwise threatened appellant with punishment that would occur if he did not confess.

Reversed.