**STATE of Minnesota, Respondent,**

v.

**Daniel Arthur STOSKOPF, Appellant.**

**No. C4–01–1473.**

Court of Appeals of Minnesota.

May 28, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Michael D. Williams, Marshall County Attorney, Warren, MN, for respondent.

David D. Dusek, Grand Forks, ND, for appellant.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and STONEBURNER, Judge.

## OPINION

R.A. RANDALL, Judge.

Appellant challenges his conviction for driving in violation of the no-alcohol restriction on his driver's license. Appellant argues that the results of a preliminary breath test should be suppressed because appellant was not given the implied-consent advisory before the test was administered. We affirm.

## FACTS

On February 17, 2001, around 3:00 p.m., Sergeant Dean Smith of the Minnesota State Highway Patrol observed appellant Daniel Stoskopf's vehicle driving over the speed limit. Smith stopped Stoskopf a short distance later. Smith approached Stoskopf's car and smelled what he thought was alcohol. Smith then asked to see Stoskopf's license.

Smith ran a driver's license check and discovered a "no-alcohol restriction"[1] on Stoskopf's license. Smith also informed Stoskopf that he was going to administer a preliminary breath test (PBT). Smith administered the PBT without reading Stoskopf an implied-consent advisory. This PBT did not produce an adequate sample so Smith administered a second PBT, which yielded a .043 reading. Smith then issued Stoskopf a citation for not wearing a seatbelt and for violating his no-alcohol restriction under Minn.Stat. § 171.09 (2000).

In July 2001, Stoskopf moved the district court to suppress the PBT results and dismiss the case because Smith did not read the implied-consent advisory to Stoskopf before administering the test. Following the hearing, the district court denied Stoskopf's motion. The court relied on Minn.Stat. § 169A.41 (2000) and determined, for purposes of a B-card issue, that there is neither a statutory requirement to read the implied-consent advisory before requesting a PBT nor a requirement that an officer observe a driver before administering the PBT. Stoskopf waived his right to a jury trial and submitted the case to the district court pursuant to *State v. Lothenbach*, 296 N.W.2d 854, 858 (Minn. 1980), *see* Minn. R.Crim. P. 26.01, subd. 3[2]. The district court convicted Stoskopf of violating his no-alcohol restriction on August 24, 2001. Following the conviction, the Commissioner of the Department of Public Safety revoked Stoskopf's B-card. Stoskopf now challenges the district court's denial of his motion to suppress and dismiss.

## ISSUE

Did the district court err in not excluding evidence of the preliminary breath test when appellant was not given an implied-consent advisory and not advised of his right to consult an attorney before being subjected to the test?

## ANALYSIS

■ In reviewing pretrial orders on motions to suppress evidence an appellate court may independently examine the facts and determine de novo whether the district court's determination was in error. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999).

Smith administered a preliminary breath test to Stoskopf. An officer may require a driver to provide a breath sample for a PBT when the officer has reason to believe the driver is operating a motor vehicle while impaired. Minn.Stat. § 169A.41, subd. 1 (2000). PBTs are preliminary in nature and are considered investigatory tools. *Id.*, subd. 2 (2000). The PBT allows the officer to determine whether the driver should be arrested or whether additional testing is necessary. *Id.* The governing statute contains no provision requiring an officer to provide an implied-consent advisory before administering the PBT. Once a PBT is administered, however, additional tests may be required pursuant to Minn.Stat. § 169A.51 (2000). If the officer determines that additional tests are required, the officer must first administer an implied-consent advisory. Minn.Stat. § 169A.51, subd. 2.

1. A "B card," is a license conditioned on abstention from alcohol or drugs, and any condition that is violated is ground for cancellation and denial of driving privileges.

2. By agreement of the defendant and the prosecuting attorney, a case may be submitted to and tried by the court based on stipulated facts * * *. [I]f the defendant is found guilty based on the stipulated facts, the defendant may appeal from the judgment of conviction and raise issues on appeal the same as from any trial to the court.

A license restriction under Minn.Stat. § 171.09 (B card) is governed by the notice and hearing requirements under Minn. Stat. § 171.18, subds. 2, 3 (2000). Unless the Commissioner of Public Safety determines that a license must be suspended immediately to protect public safety, the department may not suspend a license until 14 days after the department mails the licensee written notice of its intent to suspend the license. Minn.Stat. § 171.18, subd. 2. The licensee may request a hearing in writing. Minn.Stat. § 171.18, subd. 3. PBT results may be used in prosecuting a driver for violating a restriction on his license. Minn.Stat. § 169A.41, subd. 2(6) (2000). Neither provision discusses whether an implied-consent advisory must precede the administration of a PBT for the purpose of enforcing Minn.Stat. § 171.09.

■ Stoskopf argues that the district court erred in not granting his motion to suppress his PBT results and dismiss the case. He claims that because he was neither issued an implied-consent advisory nor advised of his right to consult with counsel before the PBT was administered, he was denied an opportunity either to assert or to waive his right to counsel. Since he was not afforded such opportunity, he argues that the PBT was administered illegally, and the results should have been excluded as fruit of the poisonous tree.

■ Stoskopf contends that the decision to submit to chemical testing under the implied consent law is a "critical stage" in a DWI proceeding and thus the right to consult counsel attaches before deciding whether to consent to the test. Appellant correctly assesses the current state of Minnesota law, which provides a limited state constitutional right to consult with counsel before considering whether to take a test because the consequences of such a decision are severe. *Friedman v. Comm'r*

*of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). In *Friedman*, the supreme court determined that a right to counsel attached when a driver, stopped for a possible DWI violation, was asked to take a chemical test. *Id.* at 832. It was at that moment, when chemical testing was requested, that a "critical stage" arose. *Id.* The court reasoned that a critical stage includes pretrial procedures that would impair a defense on the merits if the accused is required to proceed without counsel. *Id.*

Stoskopf argues that when he was stopped and he turned over his license to Smith, he was at a "critical stage" because Smith then became aware of the no-alcohol restriction on his license. He argues that, because Smith smelled alcohol on his breath and knew that any amount of alcohol registered on the PBT would result in a violation of his no-alcohol restriction, at that moment Stoskopf became the object of individualized suspicion whereby some sort of warning, such as the implied-consent advisory, is required. Stoskopf asserts that Smith's failure to provide this warning requires the PBT results be excluded.

As appellant correctly points out, his B card status is a status where the drinking alone triggers a criminal statute. It is unlawful to drive in violation of any restrictions imposed on a driver's license by the commissioner. Minn.Stat. § 171.09 (2000). It is a misdemeanor for any person to willfully violate any of the provisions of chapter 171 unless the violation is declared by any law to be a felony or gross misdemeanor. Minn.Stat. § 171.241 (2000).

> This court has held that
>
> [r]ead together, sections 171.09 and 171.241 make it a misdemeanor for any person to operate a vehicle in any manner in violation of a restricted license."

*State, City of Loretto v. Tofte,* 563 N.W.2d 322, 324 (Minn.App.1997).

Additionally, the supreme court has explained that it is clear that it was the legislature's intent to make it a misdemeanor for any person to operate a vehicle in any manner in violation of the restrictions imposed on a restricted license. *State v. Moseng,* 254 Minn. 263, 266, 95 N.W.2d 6, 10 (1959).

■ This court has found that "B card" restrictions stating "any use of alcohol or drugs invalidates license" provide sufficient notice "as to what is prohibited and the consequences of violating the restrictions" and "are not void for uncertainty." *Tofte,* 563 N.W.2d at 325. The administrative regulations require that the "restriction must be placed on the person's driver's license and driving record." Minn. R. 7503.1700, subp. 4 (1999). The commissioner has the authority to require total abstinence from alcohol as a continuing condition for retaining a driver's license. *Askildson v. Comm'r of Pub. Safety,* 403 N.W.2d 674, 678 (Minn.App.1987), *review denied* (Minn. May 28, 1987). Thus, appellant argues the identical limited right to counsel should attach at the PBT stage as it does at the implied-consent stage when law enforcement's goal is not intoxicated driving, but simply proving "you have consumed alcohol," which is the violation regardless of whether it is driving related.

■ Statutes and case law discussing PBT's are written with the assumption that, in the normal course of events, the PBT is a preliminary part of a DWI investigation. *See e.g., Knapp v. Comm'r Pub. Safety,* 610 N.W.2d 625 (Minn.2000) (stating PBT is investigatory tool to aid officers in determining if violation has occurred). Since the PBT is perceived as an investigatory tool, the right to counsel would not yet attach. *See generally, Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (holding the right to counsel attached only after formal judicial proceedings have begun). It is when the investigatory process focuses in on an individual's potential violation that the statutory protection of the implied-consent rule attaches. At that moment, a driver has entered a critical stage and is entitled to consult with an attorney before agreeing to further chemical testing. *Friedman,* 473 N.W.2d at 832. There is no criminal penalty for refusing a PBT, as there is for refusing a chemical test. Thus, there is no statutory provision or caselaw providing a limited right to counsel before a driver takes or refuses a PBT, as there is before a driver takes or refuses a breath test. In the normal course of events, drunk driving is the "end game," and the implied-consent procedure is merely a means of acquiring evidence of DWI. That is why *Friedman* and its progeny attached its holding to the implied-consent process. For example, in *State v. Nielsen,* this court held that when the implied-consent process was not used to obtain intoxication evidence the right to counsel did not attach until the commencement of formal judicial proceedings. *State v. Nielsen,* 530 N.W.2d 212, 215 (Minn. App.1995), *review denied* (Minn. June 14, 1995).

The legislature addressed the need for some protections when *specifically* delineating in Minn.Stat. § 169A.51 the requirement of an implied consent advisory. Such specificity suggests the legislature determined when, in traffic stops, a critical stage arises. The supreme court in *Friedman* could have, but did not, recognize a right to counsel attaching at the PBT stage rather than the implied-consent stage. *See Friedman,* 473 N.W.2d at 833. Since the legislature made such a provision in one section and not another and *Friedman* did not incorporate the PBT stage for its limited right to counsel, that extension rests for another day.

Stoskopf's argument is logical and raises the possibility of uncounseled PBTs unleashing potentially unfair results to drivers carrying B-cards. We understand Stoskopf's claim. He may have "fallen through the cracks" when he ended up in the situation where the PBT, administered without the benefit of counsel, was as detrimental to him as a failed BAC is to a driver. The serious consequences in Minnesota for a failed BAC helped lead to the *Friedman* limited right to counsel. However, the courts have yet to add to the *Friedman* right to counsel a similar right to a request by law enforcement for a PBT when the only issue is the consumption of alcohol, and not driving conduct. Stoskopf's case presents unfortunate results under the statutory scheme of preliminary (no *Friedman*), then specific (*Friedman* kicks in), chemical testing of drivers for DWI.

Nothing in the record indicates that the district court misread or misapplied Minn. Stat. § 169A.41. Minnesota has yet to extend the limited right to counsel before chemical testing to the earlier stage, meaning administering a PBT, when the only issue is a B-card violation.

## DECISION

The district court did not err when it denied appellant's motions to exclude the results of his preliminary breath test and dismiss the case. No implied-consent advisory is required and the *Friedman* right to counsel does not attach when someone is offered a PBT test for the purpose of determining the presence of alcohol in that individual.

**Affirmed.**