STATE of Minnesota, Respondent,

v.

Jessica Marie COLLINS, Appellant.

No. C1–02–405.

Court of Appeals of Minnesota.

Jan. 14, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Marvin Ketola, Carlton County Attorney, James M. Ross, Jr., Assistant County Attorney, Carlton County Courthouse, Carlton, MN, for respondent.

John Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Charlann E. Winking, Assistant Public Defender, Aaron J. Marcus, Certified Student Attorney, Minneapolis, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, HALBROOKS, Judge, and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges her convictions for refusal to submit to testing, disorderly conduct, and obstructing legal process. Appellant argues that her refusal to test should be vacated because she was denied the right to consult with counsel. Appellant next argues that the district court erred in adjudicating the non-traffic-related offenses because she was a juvenile. Lastly, appellant argues that the trial court erred when it sentenced her to jail time because she was a juvenile at the time she committed the adult court traffic offense. We affirm in part, reverse in part, and remand.

## FACTS

On the night of June 29, 2000, Cloquet police received a dispatcher's call stating that a passing motorist had seen a vehicle crashed on the side of the road. As the investigating officers looked for the crash scene, they saw a car parked on the side of the road. A female got out of the parked car and informed officers that she had just seen a juvenile female, wet and screaming, running down the road. The officers located the crashed vehicle, submerged in water, in a ditch. No one was inside the vehicle. As the officers arranged for the car to be towed, appellant, 17–year–old Jessica Marie Collins (Collins) arrived, having flagged down a motorist who brought her back to the accident scene. Collins was hysterical and informed the investigating officer that she had swerved to avoid hitting a deer and ended up in the ditch.

At that time, Officer Scott Holman (Officer Holman) detected a strong odor of alcohol coming from Collins and noticed that her eyes were extremely glossy and bloodshot. As Officer Holman started to speak, Collins became very uncooperative and stated that in the past she had been assaulted by Cloquet police officers. When questioned about the number of beers she consumed that night, Collins said that she had had two beers at 10:00 a.m. that morning. Collins insisted that she was fine and that the officers should take her to her parents. However, Collins refused to give the officers her parents'

name and insisted the officers not call them. At this point, Collins began crying and reiterated her claim that she had been assaulted by police officers in the past and that she was scared.

Officer Holman again asked Collins how much she had to drink and she replied that she had only had a couple of beers. Officer Holman then requested that Collins submit to a preliminary breath test (PBT). Collins submitted to the PBT without resistance. The PBT revealed an alcohol concentration of .165. Officer Holman informed Collins that she must have had more than two beers because her alcohol concentration was almost twice the legal limit. At that point, Collins became extremely uncooperative. She threatened to tell her parents that the officers had raped her if they did not take her home. She then stated she wanted her "attorney there." After she threatened to run away, the officers placed her in handcuffs and put her in the police car. Again Collins threatened to tell her parents that the officers had raped her. En route to the Carlton County jail, Collins still refused to give the officers the names and telephone number of her parents. She informed the officers that she was not going to cooperate until her "attorney was there" and again threatened to accuse the officers of raping her.

Once they arrived at the jail, Collins again became hysterical. On the way to the booking room, she told the jailers that the officers had raped her. Collins refused to take a seat in the booking room, screaming and yelling that she was not going to listen to anything the officers had to say. Collins refused Officer Holman's request to participate in field sobriety tests, again insisting that she was not going to cooperate. At this point, Officer Holman attempted to read Collins the Minnesota Implied Consent Advisory, telling her that it was important that she listened. Instead of listening, Collins began screaming, swearing, and insisting that she would not listen and continued her accusations of rape. She then told Officer Holman that she was leaving and tried to leave the booking room. When told she could not leave, Collins began screaming, kicking, yelling, and requesting her parents; she again asked to have her "attorney there." Because of her actions, Collins was physically restrained and placed in a holding cell. Officer Holman reported that, because he was unable to read Collins the implied consent advisory, he recorded it as a test refusal. At no time was Collins's request for an attorney granted. Because of her continued accusations of rape, Collins was transported to the Cloquet Hospital emergency room, but she refused to have sexual-assault testing.

Collins was charged with misdemeanor DWI in violation of Minn.Stat. § 169.121, subds. 1(a), 3(b) (2000); [1] refusal to submit to testing in violation of Minn.Stat. § 169.121, subd. 1(a); disorderly conduct in violation of Minn.Stat. § 609.72, subd. 1 (2000); and obstructing legal process in violation of Minn.Stat. § 609.50 (2000). The case was submitted to the district court on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980). The district court found Collins guilty on all charges and sentenced her to 90 days in jail and a $700 fine. The court executed 21 days of the 90–day sentence and $350 of the concurrent fine. Collins

1. 2000 Minn. Laws ch. 478, art. 1 repealed, among other sections, Minn.Stat. §§ 169.121–.123 and also enacted chapter 169A, relating to the same subject matter. Chapter 169A became effective January 1, 2001, for crimes committed and conduct occurring on or after that date. Collins's offenses were committed June 29, 2000, before the effective date of chapter 169A. We therefore cite to the 2000 Minnesota Statutes in this opinion.

was 18 years old at the time of conviction and sentencing. The sentence was stayed pending this appeal.

## ISSUES

I. Did Collins have a limited right to counsel and, if so, was it violated?

II. Did the district court lack jurisdiction to decide the non-traffic offenses because Collins was a juvenile at the time they were committed?

III. Did the trial court err when it sentenced Collins to jail because she was a juvenile at the time she committed the adult-traffic offenses?

## ANALYSIS

 Where facts are undisputed, appellate courts review de novo the issue of whether a defendant's right to counsel was violated. *State v. Christiansen*, 515 N.W.2d 110, 112 (Minn.App.1994), *review denied* (Minn. June 15, 1994). Once the facts are established, the reviewing court makes a legal determination as to whether the defendant "was accorded a reasonable opportunity to consult with counsel based on the given facts." *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 840 (Minn. App.1992), *review denied* (Minn. Oct. 20, 1992); *McNaughton v. Comm'r of Pub. Safety*, 536 N.W.2d 912, 914 (Minn.App. 1995) (whether a driver was given a reasonable opportunity to consult with counsel is ultimately a question of law).

### I

 A driver stopped for DWI has a limited right to a reasonable amount of time to attempt to consult with counsel before deciding whether to comply with the statutory requirement of implied-consent testing. Minn.Stat. § 169.123, subd. 2(b)(4) (2000); *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 837 (Minn. 1991).

A limited right to counsel means "the right to consult with a lawyer of [the driver's] own choosing." * * * A police officer not only must inform the driver of the right to counsel but also must assist in vindicating this right. * * * A police officer may vindicate a driver's limited right to counsel by providing a telephone and a reasonable amount of time to contact and speak with an attorney. * * *

*Gergen v. Comm'r of Pub. Safety*, 548 N.W.2d 307, 309 (Minn.App.1996) (quotation and citations omitted), *review denied* (Minn. Aug. 6, 1996).

It is when the investigatory process focuses in on an individual's potential violation that the statutory protection of the implied-consent rule attaches. At that moment, a driver has entered a critical stage and is entitled to consult with an attorney before agreeing to further chemical testing.

*State v. Stoskopf*, 644 N.W.2d 842, 846 (Minn.App.2002).

During the course of this DWI investigation, Collins requested three times to either have her attorney present or speak to an attorney. None of her requests were honored. Collins argues that because she was never able to consult with an attorney, her right to counsel was violated and her conviction for test refusal should be reversed.

*First Request*

 Collins argues first that she entered a critical stage once the PBT had been administered. She contends that, from that point forward, she was the focus of the investigatory process and that, therefore, the statutory protection of the implied-consent rule attached and she was entitled to consult with counsel. We disagree.

In *Friedman*, the Minnesota Supreme Court established the standard for evaluating whether a procedure constitutes a critical stage in the DWI process. The court held that a critical stage "includes those pretrial procedures that would impair a defense on the merits if the accused is required to proceed without counsel." *Friedman*, 473 N.W.2d at 833. Relying on *Friedman*, this court has concluded that the PBT is not a critical stage and therefore does not trigger the limited right to counsel. *Stoskopf*, 644 N.W.2d at 846. In *Stoskopf*, we observed that there is no criminal penalty for refusing a PBT, as there is for refusing a chemical test. *Id.*

Here, Collins stated that she wanted her "attorney there" just after Officer Holman informed her that the PBT indicated her alcohol concentration was almost twice the legal · limit. Collins argues that because she was undoubtedly the focus of the investigatory process at this point, she was entitled to her limited right to counsel. But the PBT is not a critical stage of the DWI process. Criminal liability for DWI is not contingent upon the results of a PBT. In fact, criminal liability does not attach even when a person refuses to submit to a PBT. Therefore, Collins's defense on the merits of a DWI charge would not have been impaired because of the results of the PBT. Because Collins was not in a critical stage of the DWI process when she requested an attorney after failing the PBT, no right to counsel attached. Consequently, there was no violation when Collins's request for an attorney was not vindicated.

*Second Request*

 Collins next requested an attorney while in the police car en route to the

Carlton County jail. Collins indicated that she was not going to cooperate with the officers until her "attorney was there." [2] A request for counsel must be complied with "as soon as practicable." Minn.Stat. § 481.10 (2000). However, while Collins was in the police car, she had no absolute right to immediate access to an attorney. *See Busch v. Comm'r of Pub. Safety*, 614 N.W.2d 256, 259 (Minn.App.2000) (concluding that right to counsel not violated where request was made at the scene of the arrest in the back seat of a patrol car where no telephone was readily available); *McCann v. Comm'r of Pub. Safety*, 361 N.W.2d 169, 170 (Minn.App.1985) (concluding that a person in a holding cell awaiting chemical testing has no absolute right to immediate access to an attorney).

Here, the facts closely resemble those in *Busch*, where we held that no violation of the right to counsel had occurred. In that case, Busch told the arresting officer that he wanted "to talk to [his] attorney" immediately upon his arrest for DWI, while in the back seat of the police car. *Busch*, 614 N.W.2d at 257. Finding the police car analogous to the holding cell in *McCann*, we concluded that Busch had no absolute right to immediate access to an attorney. *Id.* at 259. As in *Busch* and *McCann*, we conclude in this case that Collins's right to counsel was not violated when her request for an attorney was not vindicated while she was in the back seat of the police car.

*Third Request*

 Collins's last request for an attorney came as Officer Holman prepared to read the implied-consent advisory. Collins concedes that she was belligerent and

---

2. Although Collins does not directly argue that her right to counsel was violated at this point, we address the facts surrounding her second request in order to clearly delineate each of Collins's requests for counsel, and

because of Collins's general claim that her conviction for refusal to submit to testing should be vacated because "all of her requests concerning counsel were ignored."

argumentative and that her behavior disrupted Officer Holman's attempt to read the advisory. However, Collins argues that at the same time, she made a pre-advisory request to talk to an attorney, which could and should have been vindicated by simply giving her a telephone and an opportunity to call a lawyer.[3] She contends that because her request was ignored, her right to counsel was violated. We disagree.

This court has previously considered the implications of disruptive behavior during the implied consent procedure. In *Busch*, the defendant requested to talk to a lawyer just prior to being read the implied-consent advisory, but his request was ignored. *Id.* at 257. The police then read the advisory three times and after each reading asked the defendant if he understood the advisory. *Id.* Each time the defendant refused to respond. *Id.* The defendant also refused to respond when the police asked him three times if he wished to consult with an attorney. *Id.* We held that a defendant who requests to contact an attorney prior to the reading of the implied-consent advisory, but whose behavior thereafter frustrates the implied-consent procedure, is deemed by his behavior to have retracted his request for an attorney and to have refused to submit to a test. *Id.* at 260.

Here, Officer Holman attempted to read Collins the implied-consent advisory but was unable to do so because Collins began

screaming, swearing, making accusations of rape, and insisting that she would not listen. Collins then attempted to leave the jail and was physically restrained. Collins argues that in the midst of this commotion she invoked her limited right to speak to an attorney. But from the beginning of the process to the end, Collins was extremely uncooperative, and her actions completely frustrated the implied consent procedure. If we found the defendant's *silence* in *Busch* frustrated the testing process, then certainly the belligerent shouts and threats of Collins also frustrated the testing process. We have recognized that the implied-consent law imposes on a driver a requirement to act in a manner so as not to frustrate the testing process. *Id.* at 259. If the conduct of any driver does frustrate the process, it will amount to refusal to test. *Id.*

We conclude that Collins's conduct frustrated the implied-consent procedure and amounted to a retraction of her request to contact an attorney. Therefore, Collins's limited right to counsel was not violated and her conviction for test refusal was proper.

## II

In addition to her convictions for DWI and test refusal, Collins was also convicted of disorderly conduct and obstructing legal process. *See* Minn.Stat. § 609.72, subd. 1 (2002); Minn.Stat.

---

3. Collins acknowledges the distinction between requesting the presence of an attorney and requesting to speak to an attorney. This court recognized in *Barton v. Comm'r of Pub. Safety*, No. C2–95–2594, 1996 WL 291374 (Minn.App. June 4, 1996), that the right to the presence of an attorney during the reading of the implied-consent advisory does not exist. Collins concedes that she had no right to have an attorney present during the reading of the advisory. However, Collins contends that she requested to speak to an attorney prior to the reading of the advisory, and this request is within the scope of the limited right to counsel provided in the implied-consent advisory. The record indicates only that Collins requested that her attorney be present. Because the distinction between the presence of an attorney and speaking to an attorney is irrelevant to the resolution of whether Collins's belligerent behavior frustrated the implied-consent procedure, we will assume for purposes of this appeal that Collins also requested to speak to an attorney.

§ 609.50 (2000). Collins argues that because disorderly conduct and obstructing legal process are not traffic offenses and she was a juvenile at the time the offenses were committed, the district court lacked jurisdiction and her convictions for these offenses must be vacated.

■■■ When statutorily based, the existence of jurisdiction is a question of law subject to de novo review. *State v. Behl,* 564 N.W.2d 560, 563 (Minn.1997). The district court has original jurisdiction over criminal proceedings concerning a child who has committed an adult court traffic offense. Minn.Stat. § 260B.225, subd. 4 (2000). A child who commits an adult court traffic offense and who was, at the time of the offense, at least 16 years old, is subject to the laws and court procedures controlling adult traffic violators and shall not be under the jurisdiction of the juvenile court. Minn.Stat. § 260B.225, subd. 3 (2000). Pursuant to statute, an "adult court traffic offense" means a violation of Minn.Stat. § 169A.20 (2000) or any other misdemeanor or gross-misdemeanor-level *traffic violation* committed as part of the same behavioral incident as a violation of section 169A.20. Minn.Stat. § 260B.225, subd. 1(c)(2) (2000).

> [T]he juvenile court, on the other hand, has original and exclusive jurisdiction in proceedings concerning any child who is alleged delinquent, a juvenile traffic offender, a juvenile petty offender, and in proceedings concerning any minor alleged to have been a delinquent, a juvenile petty offender, or a juvenile traffic offender prior to having become 18 years of age.

Minn.Stat. § 260B.101, subd. 1 (2000). Except where a juvenile court has certified a minor for adult prosecution, when a child is alleged to have committed murder in the first degree after becoming 16 years of age, or when

a court has original jurisdiction of a child who has committed an adult court traffic offense, as defined in section 260B.225, subdivision 1, clause (c), a court other than a juvenile court shall immediately transfer to the juvenile court of the county the case of a minor who appears before the court on a charge of violating any state or local law or ordinance and who is under 18 years of age or who was under 18 years of age at the time of the commission of the alleged offense.

Minn.Stat. § 260B.103, subd. 1 (2000).

The statute requires that a juvenile court consider the case of a minor who has been charged with violating a state law when the violation has not been certified to adult court, is not first-degree murder committed after age 16, and is not an adult court traffic offense. Here, Collins was 17 years old at the time she committed the offenses, although she had turned 18 by the time she was convicted. Because Collins was under the age of 18 at the time the non-traffic offenses were committed, pursuant to Minn.Stat. § 260B.103 (2000), the district court should have transferred the charges of disorderly conduct and obstructing legal process to the juvenile court for adjudication.

The state argues that Minn.Stat. § 260B.103 does not apply because Collins was not a juvenile at the time of her conviction. The state appears to be referring to Minn.Stat. § 260B.225, subd. 8(b) (2000), which provides that a juvenile who is convicted of an adult court traffic offense in district court shall be treated as an adult for sentencing purposes. But the state's reliance on this section of the statute is misplaced. This section addresses the district court's authority to *sentence* juveniles who have been convicted of adult court traffic offenses as adults, not whether the district court has jurisdiction to

*adjudicate* non-traffic offenses committed by juveniles.[4]

We therefore conclude that because Collins was under 18 years of age at the time she committed the non-traffic offenses, the district court lacked jurisdiction to consider these charges. Accordingly, Collins's convictions for disorderly conduct and obstruction legal process are reversed and we remand to the district court to transfer these charges immediately to the juvenile court.

## III

Lastly, we consider whether the district court erred by sentencing Collins to jail time for the adult court traffic offenses. We are confronted with the issue of whether Collins, who was a juvenile at the time she committed the adult traffic offenses but had turned 18 by the time of conviction and sentencing, is nonetheless considered a juvenile for the purpose of sentencing.

Minn.Stat. § 260B.225, subd. 8(b) (2000), addresses sentencing of a juvenile who has been convicted of an adult court traffic offense in district court:

A *juvenile who is convicted* of an adult court traffic offense in district court shall be treated as an adult for sentencing purposes, except that the court may order the juvenile to be placed out of the home only in a residential treatment facility or in a juvenile correctional facility.

(Emphasis added.)

Collins argues that a jail sentence is impermissible under § 260B.225, subd. 8(b) because she was a juvenile (age 17) when she committed the adult court traffic

offense. Collins contends that she can only be placed in a residential treatment facility or a juvenile correctional facility. The state counters that Collins was not a juvenile but an adult (age 18) when she was convicted. Therefore, the prohibition against jail time in section 260B.225, subdivision 8(b) is inapplicable. We find the state's position more persuasive.

Both parties cite cases concerning juvenile delinquency proceedings to support their positions. *See In re Welfare of B.J.M.*, 636 N.W.2d 155 (Minn.App.2001); *In re D.S.N.*, 611 N.W.2d 811 (Minn.App. 2000). But Collins has never been adjudicated delinquent. Nor does her violation of Minn.Stat. § 169A.20 designate her a delinquent child. *See* Minn.Stat. §§ 260B.007, subd. 6(1) (" 'delinquent child' means a child who has violated any state or local law, *except as provided in section 260B.225, subdivision 1*" (emphasis added)), .225, subd. 1(c) (2000) (defining "[a]dult court traffic offense"). Furthermore, because this case involves an adult court traffic offense, the district court has jurisdiction for disposition. *See* Minn.Stat. § 260B.101, subd. 2 (2000) (the district court maintains original and exclusive jurisdiction in criminal proceedings concerning a child excluded from the definition of delinquent child under section 260B.007, subdivision 6, paragraph (b)).

Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). When statutory language is plain and unambiguous, the court must give effect to its plain meaning. *Wynkoop*

---

4. The case relied on by the state is not on point. *In re Welfare of R.J.R.*, 622 N.W.2d 160 (Minn.App.2001), holds that Minn.Stat. § 260B.193, subd. 5(d) (Supp.1999), grants original and exclusive jurisdiction to the district court in cases involving adults who allegedly *committed* offenses before the age of 18, but who were not *charged* until after age 21. *R.J.R.*, 622 N.W.2d at 162. Collins was charged prior to attaining age 21.

*v. Carpenter,* 574 N.W.2d 422, 425 (Minn. 1998). A statute is ambiguous if it is reasonably susceptible to more than one interpretation. *Tuma v. Comm'r of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986).

Minn.Stat. § 260B.225, subd. 8(b), expressly provides for adult sentencing of a *juvenile who is convicted* of an adult court traffic offense in district court. We find no statutory support for Collins's contention that an adult convicted of an adult court traffic offense committed while a juvenile is considered a juvenile for the purpose of sentencing. On the other hand, the plain language of section 260B.225, subdivision 8(b), provides for a "juvenile" convicted of an adult court traffic offense to be treated as an "adult" for the purpose of sentencing, except that the juvenile cannot be sentenced to jail time. The plain meaning of section 260B.225, subdivision 8(b), is that at the time of conviction for an adult court traffic offense, the person must be a juvenile in order for the court to be prohibited from sentencing the person to jail.

Collins argues that it is the person's age at the time the offense is committed that is determinative. We note, however, that section 260B.103, subdivision 1 (2000), which transfers jurisdiction from the district court to the juvenile court for non-adult court traffic offenses, expressly provides that age at the time of the commission of the crime is a deciding factor in determining jurisdiction. *Id.* (stating that juvenile court jurisdiction applies to a person who is under 18 years of age or "who was under 18 years of age at the time of the commission of the alleged offense"). Significantly, this language is absent from the statute governing sentencing of juveniles for adult traffic offenses. Courts cannot add to a statute "what the legislature 'purposely omits or inadvertently overlooks.' " *Ullom v. Indep. Sch. Dist.*

*No. 112,* 515 N.W.2d 615, 617 (Minn.App. 1994) (citation and quotation omitted). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2000).

If we were to embrace Collins's interpretation, we envision a situation where a juvenile who commits an adult traffic offense, but who absconds or by unlawful means avoids being convicted until the age of 25, could only be sentenced to a juvenile facility. Collins has failed to established that the legislature intended to exempt adults convicted of juvenile offenses from jail time. Therefore, we hold that the prohibition against jail time provided in Minn.Stat. § 260B.225, subd. 8(b), applies only to a person who is a juvenile at the time of conviction. Because Collins was 18 years old at the time of her conviction, she was then an adult, and she was properly sentenced to jail under Minn.Stat. § 260B.225, subd. 8(b).

## DECISION

Because Collins did not have a right to counsel at the PBT stage and while in the back seat of the police car en route to jail, her limited right to counsel under the implied consent statute was not violated. Because Collins's belligerent conduct functioned as a retraction of her request for counsel, her limited right to counsel was not violated and her conviction for test refusal under Minn.Stat. § 169A.20 was proper. Further, the prohibition against jail time for juveniles convicted of adult traffic offenses under Minn.Stat. § 260B.225, subd. 8(b), applies only to a person who was a juvenile at the time of conviction. Therefore, Collins was properly sentenced to jail for the adult traffic offense. But because the district court

lacked jurisdiction to adjudicate the non-traffic offenses, we reverse Collins's convictions for disorderly conduct and obstruction of legal process and remand to the district court to transfer these charges to the juvenile court.

**Affirmed in part, reversed in part, and remanded.**