*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0507**

State of Minnesota,
Respondent,

vs.

Derrick Jacqueay Roberson,
Appellant.

**Filed April 18, 2016
Reversed
Hooten, Judge**

Steele County District Court
File No. 74-CR-13-677

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, James S. Cole, Assistant County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Larkin, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his test-refusal conviction, arguing that his right to counsel was not vindicated. Because appellant's behavior did not amount to a retraction of his request for an attorney, we reverse.

## FACTS

At approximately 2:30 a.m. on April 5, 2013, Officer Zackary Schumaker of the Owatonna Police Department was on patrol when he observed a vehicle fail to come to a complete stop at a stop sign. After pulling the vehicle over, Officer Schumaker spoke with the driver, appellant Derrick Jacqueay Roberson, and asked for his driver's license. Appellant stated that he did not have a driver's license. Officer Schumaker smelled alcohol on appellant's breath, but when questioned, appellant denied drinking any alcohol.

Other officers arrived, and Officer Schumaker asked appellant to step out of the vehicle. Appellant exited, but reentered the vehicle to lock the doors. After appellant refused to comply with Officer Schumaker's request that he again exit the vehicle, the officers physically removed him from the vehicle. While speaking with the officers outside the vehicle, appellant asked to speak with an attorney, argued with the officers, and accused them of harassing and confusing him. After refusing to perform field sobriety tests or a preliminary breath test (PBT), appellant was placed under arrest. Appellant yelled and screamed as he was escorted to the squad car and while he sat in the parked squad car.

After transporting appellant to the Steele County Adult Detention Center, Officer Schumaker attempted to read the implied-consent advisory to appellant, but was unable to

2

complete the advisory because appellant grabbed the advisory and tore it up. Appellant was then put into confinement where Officer Schumaker once again attempted to read the implied-consent advisory to him. Appellant asked to speak to an attorney once just before the first reading of the advisory and multiple times during the second reading of the advisory. Officer Schumaker testified that he and other officers decided not to give appellant a telephone because of his behavior and because they were afraid he would break the telephone. Appellant did not submit to a blood, breath, or urine test.

Appellant was charged with second-degree test refusal, obstructing legal process, and driving after revocation. Appellant moved to dismiss the test-refusal count for failure to vindicate his right to an attorney and to dismiss all of the charges for lack of probable cause. At the omnibus hearing, the district court viewed video footage from the squad car from the night in question and video footage from the Steele County Adult Detention Center. The district court denied both of appellant's motions. Following a jury trial, appellant was found guilty of all three charges. This appeal followed.

## D E C I S I O N

Appellant challenges the district court's denial of his motion to dismiss the test-refusal charge for failure to vindicate his right to counsel. Whether a driver's right to counsel has been vindicated is a mixed question of law and fact. *Hartung v. Comm'r of Pub. Safety*, 634 N.W.2d 735, 737 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). When the facts are not in dispute, as is the case here, this court makes a legal determination as to whether the defendant "was accorded a reasonable opportunity to consult with counsel based on the given facts." *Id.* (quotation omitted). In determining

3

whether a driver's right to counsel was vindicated, we consider the totality of the circumstances. *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 841 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000).

In a DWI proceeding, "the right to counsel attaches at the chemical testing stage." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 832 (Minn. 1991). The Minnesota Constitution gives an individual a limited right to consult an attorney before deciding whether to submit to chemical testing. *Busch v. Comm'r of Pub. Safety*, 614 N.W.2d 256, 258 (Minn. App. 2000). A driver's right to counsel is considered vindicated when he or she is provided with a telephone prior to testing and given a reasonable amount of time to contact and consult with an attorney. *State v. Slette*, 585 N.W.2d 407, 409 (Minn. App. 1998). In determining whether an officer vindicated a driver's limited right to counsel, we focus "both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right." *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 842 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992).

"[T]he implied-consent law imposes on a driver a requirement to act in a manner so as not to frustrate the testing process." *State v. Collins*, 655 N.W.2d 652, 658 (Minn. App. 2003), *review denied* (Minn. Mar. 26, 2003). Behavior that frustrates the implied-consent procedure may constitute a retraction of the original request for an attorney. *Id.*

In *Collins*, the defendant challenged her conviction of test refusal, arguing that her right to counsel was violated. *Id.* at 656. The defendant requested an attorney as the arresting officer prepared to read the implied-consent advisory, but as the officer attempted to read the advisory, the defendant "began screaming, swearing, making accusations of

4

rape, and insisting that she would not listen" and had to be physically restrained when she attempted to leave the jail. *Id.* at 657–58. This court determined that "from the beginning of the process to the end, Collins was extremely uncooperative, and her actions completely frustrated the implied consent procedure." *Id.* at 658. As a result, this court concluded that Collins's conduct "amounted to a retraction of her request to contact an attorney." *Id.*

Similarly, in *Busch*, the defendant challenged the revocation of his driver's license, arguing that his right to counsel was not vindicated. 614 N.W.2d at 257. Just before the arresting officer began reading the implied-consent advisory, the defendant stated that he wanted to talk to an attorney. *Id.* The officer then read the advisory three times and asked the defendant if he understood, but each time he refused to respond. *Id.* The officer then asked the defendant four times whether he wished to consult an attorney, but each time he refused to respond. *Id.* When asked whether he would take a blood, urine, or breath test, the defendant refused to respond. *Id.* On these facts, this court concluded that the defendant's "behavior frustrated the implied consent process and amounted to a retraction of his request for an attorney and a refusal to submit to testing." *Id.* at 260.

Here, appellant's right to counsel had not yet attached when he requested to speak with an attorney when asked to perform field sobriety tests or when he requested to speak with an attorney during the booking process at the jail. *See Friedman*, 473 N.W.2d at 832.

Appellant next requested an attorney just before he was read the implied-consent advisory at the jail. Immediately after stating that he wanted to talk to an attorney, appellant yelled that the police were harassing him, refused to listen to the implied-consent advisory, swore at and talked over Officer Schumaker, who attempted to read the implied-consent

5

advisory to him, and ripped the implied-consent advisory out of Officer Schumaker's hands and tore it into pieces. Appellant was restrained by officers and moved into a holding cell. Although appellant's right to counsel had attached at this point and he clearly indicated his desire to contact an attorney, we conclude that by screaming, swearing, and ripping the advisory from Officer Schumaker's hands, appellant's conduct frustrated the implied-consent procedure and amounted to a retraction of his request for counsel.

Our review does not end there, however, because Officer Schumaker read the implied-consent advisory to appellant a second time after he was placed in the holding cell. While Officer Schumaker read the advisory a second time, appellant acted in a disruptive manner by yelling, swearing, and kicking the door of the holding cell. When asked whether he wished to consult with an attorney, however, appellant answered affirmatively, stopped his disruptive behavior, and calmed down. A few minutes later, a Steele County Sheriff's Deputy asked if appellant wanted to speak with an attorney, but appellant refused to respond. Approximately one minute after that encounter, appellant was again asked whether he wanted to talk to an attorney, and appellant replied that he needed to call his family to get his attorney's number. Appellant then accused the police of harassing him and stated that he needed to make a complaint to the sheriff.

Appellant concedes that his behavior in the booking room and initially in the holding cell was disruptive. Appellant argues, however, that his right to counsel was not vindicated because after his request for counsel during the second reading of the advisory, he was never provided a telephone so that he could call his attorney or request assistance in contacting his attorney.

6

Based upon the record here, we conclude that by reading the advisory to appellant a second time, the police revived appellant's ability to assert his right to counsel despite his earlier retraction due to his disruptive and uncooperative conduct. To conclude otherwise would be to conclude that any inquiries into appellant's desire to contact an attorney after his retraction were meaningless, despite the fact that the officers expressly asked him if he wanted to speak with an attorney. Appellant unequivocally stated that he wanted to speak with an attorney during the second reading of the implied-consent advisory. The question, therefore, is whether appellant's conduct after this unequivocal invocation of his right to counsel "frustrated the implied-consent procedure and amounted to a retraction of [his] request to contact an attorney." *See Collins*, 655 N.W.2d at 658.

After informing Officer Schumaker of his desire to speak with an attorney during the second reading of the advisory, appellant immediately calmed down and stopped acting disruptively. Although he did ignore the deputy who tried to confirm that he wanted an attorney, upon being asked again whether he wished to speak with an attorney, appellant immediately reiterated his desire to talk to an attorney by saying he needed to talk to his family to get his attorney's number. Because appellant only refused to respond to a deputy's inquiry once and affirmed his desire to speak with an attorney shortly thereafter, his behavior is distinguishable from the behavior of the defendant in *Busch*, who repeatedly refused to respond to the officer's questions. 614 N.W.2d at 257. And, this court has stated in the implied-consent context that "[p]olice officers must permit drivers to contact a family member to obtain an attorney's name and telephone number." *State v. Christiansen*, 515 N.W.2d 110, 113 (Minn. App. 1994), *review denied* (Minn. June 15, 1994). After stating

7

that he wanted to contact his family to get an attorney's number, appellant began to complain that he was being harassed and insisting that he talk with a sheriff, but did not return to the extremely belligerent and uncooperative behavior he exhibited during the first and second readings of the implied-consent advisory. We conclude that appellant's behavior after the second reading of the advisory did not frustrate the implied-consent procedure so as to amount to a retraction of his request for counsel.

As appellant's conduct did not constitute a retraction of his request for counsel, the police were required to vindicate his right to counsel by providing him with a telephone and a reasonable amount of time to contact an attorney. *Slette*, 585 N.W.2d at 409. While the police were understandably concerned about appellant's inexcusably uncooperative and obstructive behavior, their concern that appellant would break the telephone was not a sufficient reason to deprive him of his right to counsel, as he calmed down after requesting an attorney during the second reading of the advisory. Moreover, rather than depriving appellant of his right to counsel, the police could have vindicated his right to counsel by providing him with a telephone, and then, if he broke it, they could have brought additional charges against him. Because appellant unequivocally requested an attorney in response to the officer's question during the second reading of the advisory and did not retract his request by his subsequent conduct, we conclude that the district court erred in determining that his right to counsel was not violated.

Evidence obtained in violation of a defendant's right to counsel in the implied-consent context must be suppressed. *Slette*, 585 N.W.2d at 410. The evidence obtained here in violation of appellant's right to counsel was evidence of his test refusal. Because

appellant's right to counsel was not vindicated, the evidence of his exchange with police must be suppressed. *See State v. Karau*, 496 N.W.2d 416, 418–19 (Minn. App. 1993) (suppressing breath test results where defendant's right to counsel was violated). Therefore, we reverse appellant's test-refusal conviction.[1]

**Reversed.**

---

[1] Appellant also argues that there is insufficient evidence to support his conviction of second-degree test refusal because the arresting officer did not have probable cause to arrest him for driving while intoxicated. In his pro se supplemental brief, appellant also challenges his test-refusal conviction by arguing that (1) the arresting officer improperly expanded the scope of the stop, (2) his Fifth Amendment right to counsel was violated; and (3) the district court abused its discretion by admitting into evidence the squad-car video and the video from the jail. Because we are reversing appellant's test-refusal conviction on the grounds that his right to counsel was not vindicated, we do not address his arguments regarding the sufficiency of the evidence of his test-refusal conviction or his pro se arguments.