**Randy Lee BUSCH, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C8–99–2124.

Court of Appeals of Minnesota.

July 18, 2000.

Brent S. Schafer, Gerald Miller and Associates, Minneapolis, for appellant.

Mike Hatch, Attorney General, Jeffrey F. Lebowski, Sheila M. Fitzgerald, Assistant Attorneys General, St. Paul, for respondent.

Considered and decided by SHUMAKER, Presiding Judge, HUSPENI, Judge,* and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.**

Driver challenges the district court's decision sustaining the revocation of his driver's license under the implied consent law, arguing that his right to counsel was not vindicated. Because we agree with the district court that the driver's conduct sub-

sequent to requesting an attorney constituted a retraction of his request and a refusal to test, we affirm.

## FACTS

On July 9, 1999, appellant Randy Lee Busch was arrested for DWI. Immediately upon being arrested, he laughed, smiled, and told arresting officer Jeff Tate, "I want to talk to my attorney."

Officer Tate proceeded to read the Minnesota implied consent advisory to Busch, who was seated in the back seat of Tate's patrol car. Tate read the advisory once and asked Busch if he understood the advisory. Busch refused to respond. Tate read the advisory a second time and again received no response. He told Busch he needed a yes or no answer and read the advisory a third time, but again received no response. Each time he read the advisory, Busch would smile and roll his head or look away from Tate.

Tate then asked Busch if he wished to consult an attorney. Busch refused to respond. Tate repeated the question three times, each time receiving no response. Tate then asked Busch if he would take a blood, urine, or breath test, but Busch refused to reply. Tate informed Busch that his silence constituted a refusal to test, and he transported Busch to the Scott County jail. En route to the jail Busch told Tate that he was going to "make things difficult" for Tate and that Tate would "pay for this."

Busch's driver's license was revoked for a period of one year, based on his refusal to submit to testing. Busch filed a petition challenging the revocation. At the hearing before the district court judge, the parties stipulated that the only issue was whether or not Busch's right to counsel had been vindicated. An audiotape recording of the incident was played and admitted into evi-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

dence. The district court affirmed the revocation, concluding that Busch's failure to respond to Tate's questions amounted to a retraction of his request for an attorney and a refusal to test. Busch appeals.

## ISSUE

Did appellants behavior during the reading of the implied consent advisory frustrate the process, thus constituting a retraction of his request for an attorney and a refusal to test?

## ANALYSIS

The implied consent law provides that any person who drives a motor vehicle consents to a chemical test to determine the presence of alcohol. Minn.Stat. § 169.123, subd. 2(a) (1998). The consequence of refusing the test is revocation of the driver's license for one year. Minn. Stat. § 169.123, subd. 4(c) (1998). Whether one has refused testing is a question of fact. *Lynch v. Commissioner of Pub. Safety*, 498 N.W.2d 37, 38 (Minn.App. 1993). On appeal, a district court's factual findings will not be disturbed unless clearly erroneous. *Id.* at 39. Conclusions of law may be reversed if the district court erroneously construed the law. *Dehn v. Commissioner of Pub. Safety*, 394 N.W.2d 272, 273 (Minn.App.1986).

The district court concluded as a matter of law that Busch's uncooperative behavior while Officer Tate read the implied consent advisory amounted to a retraction of his request for an attorney and a refusal to submit to testing. On appeal, Busch raises two arguments: (1) his right

to counsel was not vindicated and (2) therefore his refusal to test was reasonable. However, we agree with the district court that the proper framing of the issue is whether or not Busch's behavior amounted to a retraction of his request to contact an attorney: if Busch retracted his request, his right to counsel was not violated.[1]

Under the Minnesota Constitution, an individual has a limited right, upon request, to obtain legal advice before deciding whether to submit to chemical testing, provided the consultation does not unreasonably delay administration of the test. Minn.Stat. § 169.123, subd. 2(b)(4) (1998); *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). In arguing that his right to counsel was not vindicated, Busch relies on *McCann v. Commissioner of Pub. Safety*, 361 N.W.2d 169 (Minn.App.1985). In *McCann*, the defendant was arrested for DWI and placed in a holding cell at the jail, where he requested an attorney. *Id.* at 170. His request was ignored because the officers were completing the testing of another driver arrested for DWI. *Id.* McCann was then taken to an interview room for the implied consent advisory, where he again requested an attorney, but again his request was ignored and the advisory was read to him. *Id.*

Although this court found that McCann's right to counsel was violated when his *second* request was ignored, we found that there was no such violation when the officers ignored his first request. The court, quoting Minn.Stat. § 481.10 (1982), noted that a request for an attorney must be

1. In district court, the parties stipulated that the only issue was whether or not Busch's right to counsel was vindicated. *See Linde v. Commissioner of Pub. Safety*, 586 N.W.2d 807, 809 (Minn.App.1998) (right vindicated if driver is provided with telephone and given reasonable time to contact and consult with attorney prior to testing) (quotation and citation omitted), *review denied* (Minn. Feb. 18, 1999). As a matter of law, if a person's right to counsel is not vindicated, a refusal to test is reasonable. *See, e.g., Prideaux v. Department*

*of Pub. Safety*, 310 Minn. 405, 422, 247 N.W.2d 385, 395 (1976) (if police fail to vindicate right to counsel and driver refuses to take test, he should not be deemed to have unreasonably refused the test). Although Busch attempts now to present the issues in terms of vindication of his right to an attorney and the reasonableness of his refusal to test, we agree with the district court that the correct analysis is whether he retracted his request to contact an attorney.

complied with "as soon as possible." *Id.* The court went on to state that when a person is in a holding cell, "there is no absolute right to immediate access to an attorney." *Id.* It was only after McCann was taken to the interview room and made his second request to call his attorney that "the officer was obligated to vindicate" McCann's right to counsel. *Id.*

The facts here closely resemble those surrounding McCann's first request for an attorney, where we ruled there was no violation of McCann's right to counsel. Like McCann, Busch had "no absolute right to immediate access to an attorney." *Id.* Busch's request was made at the scene of the arrest in the back seat of a patrol car where no telephone was readily available. Busch argues that the patrol car served as the "interview room" in *McCann,* so upon his request Tate was required to provide him with access to a telephone. Since there was no telephone in the back seat of the patrol car, however, the situation was more analogous to the holding cell in *McCann* than to the interview room.

Moreover, in *McCann,* as noted above, we said the officers had no duty to interrupt their test of the other driver, and it was reasonable for them to let McCann wait a few minutes to ensure that adequate security was available. Similarly, in the instant case it was reasonable for Officer Tate to complete his statutorily mandated duty of informing Busch of his rights and duties under the implied consent law. *See* Minn.Stat. § 169.123, subd. 2(b) (1998) ("[a]t the time a test is required, the person *shall* be informed" that the law requires the person to take a test, that refusal to test is a crime, and that the driver has the right to consult an attorney) (emphasis added). For these reasons, *McCann* does not support Busch's position.

■ Once an officer has lawfully invoked the implied consent procedure, a driver must decide whether or not to submit to a test. As noted above, a driver has the right, upon request, to obtain legal advice before making that decision. Minn. Stat. § 169.123, subd. 2(b)(4) (1998); *Friedman,* 473 N.W.2d at 835. A failure to make the decision constitutes a refusal to test and will result in a revocation. *Cf. Holtz·v. Commissioner of Pub. Safety,* 340 N.W.2d 363 (Minn.App.1983) (officer properly determined driver had refused testing when driver remained silent in response to questions about whether he understood his rights under implied consent advisory).

■ Chemical testing in a DWI proceeding, pursuant to the implied consent law, is not self-incrimination and does not trigger Fifth Amendment protection against self-incrimination. *State v. Slette,* 585 N.W.2d 407, 410 (Minn.App.1998). Busch's request for an attorney was sufficiently ambiguous to allow Officer Tate to attempt to clarify the request following the reading of the implied consent advisory; it was unclear whether Busch was requesting an attorney in connection with his DWI arrest or the request to take a chemical test. *See id.* (when driver expresses interest in consulting with an attorney, officer must either vindicate underlying right or clarify driver's request). Busch proceeded to frustrate Officer Tate's attempts by refusing to respond to his questions, by rolling his head away while Tate read the advisory, and by telling Tate that he wanted to make things difficult for the officer and that the officer would pay for this.

Beyond the duty to make the initial decision of whether or not to submit to a test, the courts have recognized that the implied consent law imposes on a driver a requirement to act in a manner so as not to frustrate the testing process. If a driver does frustrate the process, his conduct will amount to a refusal to test. *See, e.g., Palme v. Commissioner of Pub. Safety,* 541 N.W.2d 340, 344 (Minn.App.1995) ("driver must make a good faith and sincere effort to reach an attorney") (quoting *Kuhn v. Commissioner of Pub. Safety,* 488 N.W.2d 838, 842 (Minn.App.1992), *review*

*denied* (Minn. Oct. 20, 1992)), *review denied* (Minn. Feb. 27, 1996); *Sigfrinius v. Commissioner of Pub. Safety,* 378 N.W.2d 124 (Minn.App.1985) (driver's actions constituted a refusal to test, in case where driver put breath mint in his mouth and was advised five to six times to remove it, and trial court found driver's actions were calculated to avoid suspension of license).[2]

Based on these facts, we conclude that the district court properly found that Busch's behavior frustrated the implied consent process and amounted to a retraction of his request for an attorney and a refusal to submit to testing.[3]

### DECISION

Because Busch's behavior during the reading of the implied consent advisory frustrated the implied consent process and constituted a retraction of his request for an attorney and a refusal to test, the district court correctly affirmed the revocation of Busch's license under the implied consent laws.

**Affirmed.**

---

**2.** We note that the result in the instant case is also consistent with this court's decisions in *Barton v. Commissioner of Pub. Safety,* No. C2–95–2594, 1996 WL 291374 (Minn.App. June 4, 1996) (refusal to test found where driver's "uncooperative behavior" frustrated officer's attempt to read implied consent advisory) and *Lower v. Commissioner of Pub. Safety,* No. C1–95–965, 1996 WL 118403 (Minn. App. Mar. 19, 1996) (constructive refusal to test results when driver's conduct following reading of implied consent advisory frustrates the process), cited in respondent's appellate brief.

**3.** Because we have affirmed that Busch's conduct subsequent to his request for an attorney amounted to a retraction of his request, we need not address the issue of when the right to counsel in an implied consent advisory case attaches.