*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0196**

State of Minnesota,
Respondent,

vs.

Lisa Suzanne Hughes,
Appellant.

**Filed July 14, 2014
Affirmed
Cleary, Chief Judge**

Ramsey County District Court
File No. 62SU-CR-12-432

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Erickson, Jr., North St. Paul City Attorney, Roseville, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Cleary, Chief Judge; Reyes, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Lisa Suzanne Hughes challenges her conviction of second-degree test refusal, arguing that the test-refusal statute is unconstitutional under state and federal due-process guarantees and the unconstitutional-conditions doctrine. She also asserts that there is insufficient evidence that she refused breath testing. Because appellant has not demonstrated that the test-refusal statute is unconstitutional and the evidence is sufficient to have permitted the jury to convict appellant of second-degree test refusal, we affirm.

## FACTS

On December 2, 2011, appellant was stopped in North St. Paul after making an improper turn into a parking spot. During the stop, the police officer observed that appellant's eyes were red, bloodshot, and watery, and he smelled a moderate odor of alcohol emanating from her. Appellant was asked to perform and failed several field sobriety tests. A preliminary breath test was administered and indicated an alcohol concentration of .132. Appellant was subsequently placed under arrest for driving while impaired (DWI).

The officer took appellant to the police station and read her the implied-consent advisory. Appellant consulted with an attorney over the phone and agreed to take a breath test. However, when the officer attempted to use an Intoxilyzer 5000 to obtain a breath sample, appellant did not provide enough breath for an adequate sample. When appellant was instructed to blow into the Intoxilyzer mouthpiece, she would either blow through her nose or expel her breath prior to placing her mouth on the mouthpiece. The

first test reported a deficient sample. The officer attempted to administer a second breath test, but appellant again failed to provide enough air to register a sample, and the test reported a deficient sample. On the second test, 24 breaths were reported, indicating appellant's breath started and stopped 24 times without enough air to register a sample. After the second failed attempt to obtain a breath sample, the officer informed appellant that her test would be recorded as a refusal.

Appellant was charged with second-degree test refusal in violation of Minn. Stat. § 169A.20, subd. 2 (2010) and third-degree DWI in violation of Minn. Stat. § 169A.20, subd. 1(1) (2010). On November 2, 2012, a jury found appellant guilty on both counts. The district court imposed a sentence for appellant's test-refusal conviction, but did not impose a sentence for her DWI conviction. This appeal followed.

**D E C I S I O N**

**I.      Appellant has not demonstrated that Minn. Stat. § 169A.20, subd. 2 is unconstitutional under the Minnesota and United States Constitutions.**

Appellant argues that Minn. Stat. § 169A.20, subd. 2 violates state and federal due-process guarantees in light of the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). Section 169A.20, subdivision 2 makes it a crime "for any person to refuse to submit to a chemical test of the person's blood, breath, or urine." The statute criminalizes refusal to submit to testing as is required under Minnesota's implied-consent statute. *See* Minn. Stat. § 169A.51, subd. 1(a) (2010) (stating that any person who drives in Minnesota consents to a chemical test of that person's blood, breath, or urine). Test refusal is a crime when there is probable cause to

3

believe that a person was driving while intoxicated and the person has been lawfully arrested for DWI. *See id.*, subd. 1(b) (2010).

"The constitutionality of a statute is a question of law that we review de novo." *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007). Minnesota statutes are presumed constitutional. *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). This court's power to declare a law unconstitutional is exercised with great caution, and we will uphold a statute "unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt." *SooHoo*, 731 N.W.2d at 821.

As an initial matter, respondent asserts that appellant did not challenge the constitutionality of the test-refusal statute in district court and should therefore be barred from raising this issue for the first time on appeal. Although this court generally will not decide issues that were not raised in district court, we may "deviate from this rule when the interests of justice require consideration of such issues and doing so would not unfairly surprise a party to the appeal." *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996); *see also* Minn. R. Crim. P. 28.02, subd. 11 (stating that this court may consider "any other matter, as the interests of justice may require").

Appellant was convicted and sentenced on November 2, 2012. The United States Supreme Court decided *McNeely* on April 17, 2013, holding that alcohol dissipation in blood does not alone establish an exigent circumstance sufficient to excuse police from obtaining a warrant for a blood test. *McNeely*, 133 S. Ct. at 1556. Applying *McNeely*, the Minnesota Supreme Court decided *State v. Brooks* on October 23, 2013, holding that a driver's consent is not per se coerced and involuntary solely because it is a crime to

4

refuse to submit to testing. 838 N.W.2d 563, 570 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Both cases were issued after appellant was convicted and discuss the constitutionality of implied-consent laws.

Furthermore, respondent is not prejudiced by consideration of this issue on appeal because the constitutionality of the test-refusal statute is a purely legal question and respondent has briefed the issue. *See Woodhall v. State*, 738 N.W.2d 357, 363 n.6 (Minn. 2007) (determining that the state was not prejudiced by consideration of the constitutionality of a statute when the court was presented with a purely legal issue and the state had briefed the issue). Because the interests of justice require consideration of appellant's constitutional challenge, and doing so would not prejudice respondent, we address appellant's constitutional challenge on the merits.

Appellant argues that the test-refusal statute violates "state and federal due process guarantees" in light of the United States Supreme Court's decision in *Missouri v. McNeely*. Both the Minnesota and United States Constitutions contain Due Process Clauses, which provide that the government cannot deprive a person of life, liberty, or property without due process of law. U.S. Const. amends. V, XIV, § 1; Minn. Const. art. I, § 7; *see also Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988) (stating that the "due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States"). As previously stated, *McNeely* held that the dissipation of alcohol in blood is not an exigent circumstance sufficient to excuse police from obtaining a warrant under the Fourth Amendment for a blood test. *McNeely*, 133 S. Ct. at 1556. *McNeely* did not directly rule

5

on the constitutionality of implied-consent statutes. However, the Court did note that states have a "broad range of legal tools to enforce their drunk-driving laws." *Id.* at 1566 (plurality opinion); *see In re Estate of Bush*, 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) (determining that "[e]ven dictum, if it contains an expression of the opinion of the court, is entitled to considerable weight"). The Court further noted that "[s]uch laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *McNeely*, 133 S. Ct. at 1566 (plurality opinion). Citing the *McNeely* decision, the Minnesota Supreme Court recently reaffirmed this favorable view of implied-consent laws:

> As the Supreme Court recognized in *McNeely,* implied consent laws, which "require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense," are "*legal tools*" states continue to have to enforce their drunk driving laws. [*McNeely*,] 133 S.Ct. at 1566 (plurality opinion) (emphasis added).

*Brooks*, 838 N.W.2d at 572 (first alteration in original).

In reviewing appellant's constitutional challenge, we reiterate that a party challenging the constitutionality of a statute "bears the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn. 1990). Although appellant seems to assert that there is a fundamental right at issue, she also seems to argue that while the object of the

test-refusal statute is permissible, the means are not reasonable. The juxtaposition of these arguments makes it unclear as to what level of scrutiny appellant wishes this court to apply. *See State v. Behl*, 564 N.W.2d 560, 567 (Minn. 1997) (stating that when no fundamental right is at issue, a law must be "a reasonable means to a permissive object"); *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn. 1983) (stating that when a fundamental right is limited, a law will be upheld "if it is necessary to serve a compelling governmental interest"). Appellant's unclear substantive-due-process argumentation does not meet the "heavy burden" she bears in demonstrating that the test-refusal statute is unconstitutional beyond a reasonable doubt. Additionally, although the *Brooks* and *McNeely* decisions do not expressly hold that the test-refusal statute is constitutional, we will not ignore the supportive statements the United States and Minnesota Supreme Courts have made with regard to implied-consent laws.

Appellant also asserts that the test-refusal statute violates the unconstitutional-conditions doctrine. "[T]he unconstitutional conditions doctrine reflects a limit on the state's ability to coerce waiver of a constitutional right where the state may not impose on that right directly." *State v. Netland*, 762 N.W.2d 202, 211 (Minn. 2009), *abrogated in part by McNeely*, 133 S. Ct. 1552, *as recognized in Brooks*, 838 N.W.2d at 567. To succeed under the doctrine, a party must "successfully plead[] the merits of the underlying unconstitutional government infringement." *Id.* On a challenge to the test-refusal statute, this involves "establish[ing] that the criminal test-refusal statute authorizes an unconstitutional search." *Id.* at 212.

7

Appellant's argument that the test-refusal statute violates the unconstitutional-conditions doctrine is essentially an argument that the statute violates substantive due process. As previously stated, appellant has not met her heavy burden of showing an underlying unconstitutional government infringement. Because appellant has failed to "successfully plead[] the merits of the underlying unconstitutional government infringement," her argument regarding the unconstitutional-conditions doctrine also fails. *See id.* at 211.

## II.     There is sufficient evidence to have permitted a jury to convict appellant of second-degree test refusal.

Appellant argues that "there was insufficient evidence to prove that the deficient [breath] sample was not the result of" issues with the Intoxilyzer "compounded [b]y [her] medical conditions," and therefore insufficient evidence that she refused to take the breath test. On a challenge to the sufficiency of the evidence, "our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The verdict will not be disturbed "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the] defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004) (quotation omitted).

8

Under the test-refusal statute, a driver refuses to submit to chemical testing by "any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). If a driver's actions frustrate the testing process, the driver's conduct will amount to a test refusal. *Busch v. Comm'r of Pub. Safety*, 614 N.W.2d 256, 259 (Minn. App. 2000); *see also State v. Collins*, 655 N.W.2d 652, 658 (Minn. App. 2003) (applying *Busch* in a case of criminal test refusal), *review denied* (Minn. Mar. 26, 2003).[1]

In support of reversal, appellant first argues that under *In re Source Code Evidentiary Hearings in Implied Consent Matters*, 816 N.W.2d 525 (Minn. 2012), the district court was required to make a pretrial ruling that the Intoxilyzer was reliable and that the deficient breath samples were not the result of a source code error. In *In re Source Code Evidentiary Hearings*, the Minnesota Supreme Court upheld a district court pretrial determination that an Intoxilyzer that reported a "deficient sample" while running "240 software" was unreliable and inadmissible. 816 N.W.2d 543.[2] The court stated that

---

[1] As an initial matter, respondent asserts that appellant's failure to provide two separate, adequate breath samples constitutes a refusal under Minn. Stat. § 169A.51, subd. 5(c) (2010). Respondent's reliance on section 169A.51, subdivision 5(c) is misplaced. Section 169A.51, subdivision 5(c) applies to civil, not criminal, test refusal. *See* Minn. Stat. § 169A.51, subd. 5(c) (stating that a failure to provide two separate, adequate breath samples is a refusal "[f]or purposes of section 169A.52," the statutory section addressing civil test refusal).

[2] The Intoxilyzer administered to appellant was running "SLAVE 75_0240" software.

9

the reliability of an Intoxilyzer instrument that reports a deficient sample is not called into question

> [w]hen the State establishes that the 'deficient sample' is not due to the [] software [] by presenting additional evidence, such as an officer's observation that the driver did not engage in exorbitantly hard blowing or other conduct that would cause the [] software to report an adequate breath sample as a deficient sample.

*Id.* Appellant's reliance on this case is unpersuasive. The record does not reflect that appellant challenged the reliability of the Intoxilyzer in district court. We generally do not decide issues that were not raised before the district court. *Roby*, 547 N.W.2d at 357. Appellant's argument presupposes that the district court was required to make a finding regarding the reliability of the Intoxilyzer sua sponte. Appellant has not cited any legal support for this proposition and has not alleged that respondent failed to make a prima facie showing of reliability. *See State v. Ards*, 816 N.W.2d 679, 687 (Minn. App. 2012) (stating that the proponent of a chemical test must present a prima facie showing of test reliability and trustworthy administration). Furthermore, even if appellant had challenged the reliability of the Intoxilyzer, additional evidence that a deficient sample was due to something other than the Intoxilyzer was provided by the officer's testimony at trial that appellant was either not blowing into the mouthpiece or blowing very little air into the mouthpiece.

Appellant also maintains that her medical conditions provide a basis for determining that there was insufficient evidence that she refused a breath test. Although not explicitly stated in her brief, appellant seems to suggest that her medical conditions

10

prevented her from providing an adequate breath sample. Appellant asserts that "[t]he trial testimony established that [she] suffered from a long list of medical issues, including respiratory issues." The jury was given an instruction on the defense of physical inability: "Defendant is not guilty of the crime of test refusal if she could not provide an adequate breath sample due to physical inability." At trial, appellant called Dr. Thomas Lundsten, her treating physician. Dr. Lundsten testified that he had treated appellant for a sinus infection, congestion, and bronchitis in September and October 2011. Appellant did not report an inability to breath to Dr. Lundsten during an office visit on December 7, 2011. At the end of December 2011, he noted that she reported to him over the phone that she was short of breath and coughing. Appellant testified at trial that she was feeling the effects of bronchitis during the test and that she could not breathe any longer than she did. Appellant also has fibromyalgia, osteoporosis, and an ileostomy bag.

We are to assume that the jury believed respondent's witnesses and disbelieved any evidence to the contrary. *Moore*, 438 N.W.2d at 108. Appellant was able to provide a sufficient breath sample for a preliminary breath test. The officer testified that, during the Intoxilyzer test, appellant would either blow through her nose or expel her breath prior to placing her mouth on the mouthpiece. While the officer was attempting to administer the breath test, appellant complained that she could not complete the test because her nose was previously broken. However, as the officer testified, use of the nose is not required to blow into the Intoxilyzer. Additionally, the officer did not observe appellant wheeze or exhibit any other difficulties breathing. The jury was given an instruction addressing the defense of physical inability and did not find that the defense

11

applied. Given the evidence available, the jury could reasonably conclude that appellant frustrated the testing process and was guilty of test refusal. *See Busch*, 614 N.W.2d at 259. The evidence, when viewed in a light most favorable to the conviction, is sufficient to have permitted the jurors to convict appellant of criminal test refusal.[3]

    **Affirmed.**

---

[3] Appellant also submitted a pro se supplemental brief. The brief does not contain any legal arguments. Appellant seems to express discontent that none of the jurors she selected were chosen and that the questions for the testifying officer that she gave her trial counsel went unasked. We generally decline to address issues in the absence of adequate briefing. *See State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997).