*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1263**

State of Minnesota,
Respondent,

vs.

Grant Jason Bresnahan,
Appellant.

**Filed June 13, 2016
Affirmed in part and reversed in part
Kirk, Judge**

Aitkin County District Court
File No. 01-CR-14-687

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Jim Ratz, Aitkin County Attorney, Aitkin, Minnesota (for respondent)

Sharon E. Roberg-Perez, Chelsea A. Walcker, Special Assistant State Public Defenders, Robins Kaplan LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant Grant Jason Bresnahan was convicted by a jury of test refusal and driving while under the influence after he refused to submit to a chemical test of his

blood or urine. On appeal, appellant argues that: (1) his limited right to counsel was not vindicated; (2) the test-refusal statute unconstitutionally violates his due-process rights; and (3) he is entitled to a new trial on the driving-while-under-the-influence charge because the evidence gathered during the implied-consent procedure was prejudicial and should not have been presented to the jury. We affirm in part and reverse in part.

## FACTS

Appellant's convictions stem from a one-vehicle rollover crash that occurred on July 26, 2014 in Aitkin County. Appellant was the sole occupant of the vehicle and sustained injuries. At approximately 7:20 p.m., Trooper Andrew Olson of the Minnesota State Patrol was dispatched to the scene. While speaking with appellant, Trooper Olson noticed a strong odor of an alcoholic beverage emanating from appellant and that he had bloodshot and watery eyes. Appellant admitted to drinking alcohol and refused to provide a breath sample for a preliminary breath test (PBT). Appellant was flown by helicopter to North Memorial Hospital.

Respondent State of Minnesota charged appellant with test refusal and driving while under the influence. Appellant moved to dismiss the refusal charge and suppress the evidence of his test refusal on numerous grounds, including: (1) appellant's right to counsel was violated; (2) the test-refusal statute is unconstitutional; and (3) appellant's due-process rights were violated when he was charged with test refusal. The district court held a contested omnibus hearing on appellant's motion.

At the hearing, Trooper Monica Casey of the Minnesota State Patrol testified that she was dispatched to North Memorial Hospital to obtain a blood sample from appellant.

2

Prior to going to the hospital, she was informed by dispatch that alcohol was a suspected factor in the accident. From approximately 9:00 p.m. until 9:55 p.m., she waited in the hospital emergency room to make contact with appellant. During that time, the flight crew who transported appellant to the hospital informed her that appellant became aggressive during the flight and that he was given an injection of ketamine to calm him down. While in the emergency room, appellant was calm and accepted medical treatment from hospital personnel. Trooper Casey did not obtain a search warrant to collect appellant's blood sample.

When Trooper Casey spoke with appellant, she read him Minnesota's implied-consent advisory. The advisory was recorded. While Trooper Casey read the advisory, she noted that appellant's eyes were extremely red and watery and that there was an overwhelming smell of an alcoholic beverage coming from him. Appellant repeatedly interrupted the advisory and also stated that Trooper Casey knew that he was drunk.

Trooper Casey asked appellant multiple times whether he wanted to contact an attorney, and he did not give a clear answer. Over the course of several minutes, she asked him multiple times if he would submit to a blood or urine test, but he did not give a clear answer. Trooper Casey offered appellant a telephone, but he did not give a verbal answer and shook his head "no" when asked if he would use it.

At one point during her conversation with appellant, Trooper Casey said, "I'm guessing talking to an attorney right now is not really going to be beneficial to you." In denying appellant's motion, the district court concluded in its order and memorandum that Trooper Casey made this comment in regards to appellant's physical and mental

3

state. A short time after making this statement, Trooper Casey again asked appellant if he wished to contact an attorney. She also read appellant the implied-consent advisory a second time. After several minutes, because appellant would not provide clear responses, and because hospital staff wanted to resume his medical treatment, Trooper Casey deemed appellant to have refused testing.

The district court also concluded that appellant chose not to answer Trooper Casey's questions despite being able to do so and that he was capable of speaking with an attorney if he had wanted to do so. The district court concluded that appellant's behavior was evasive and that he was unwilling to give definitive answers.

Following a two-day trial, a jury found appellant guilty of test refusal and driving while under the influence. This appeal follows.

## DECISION

### I. Appellant's right to counsel was vindicated.

In an implied-consent proceeding, "the right to counsel attaches at the chemical testing stage." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 832 (Minn. 1991). The Minnesota Constitution gives a subject a limited right to consult an attorney before deciding whether to submit to chemical testing. *Id.*; *Busch v. Comm'r of Pub. Safety*, 614 N.W.2d 256, 258 (Minn. App. 2000). Whether a driver's right to counsel has been vindicated is a mixed question of law and fact. *Hartung v. Comm'r of Pub. Safety*, 634 N.W.2d 735, 737 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). "When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's

4

legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

Here, there is no dispute as to what occurred during the implied-consent process. "Once the facts are established, the reviewing court makes a legal determination as to whether the defendant 'was accorded a reasonable opportunity to consult with counsel based on the given facts.'" *State v. Collins*, 655 N.W.2d 652, 656 (Minn. App. 2003), *review denied* (Minn. Mar. 26, 2003) (quoting *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 840 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992)). In determining whether a driver's right to counsel was vindicated, we consider the totality of the circumstances. *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 841 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000). When determining whether the officer vindicated the driver's limited right to counsel, we focus "both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right." *Kuhn*, 488 N.W.2d at 842.

An officer is not obligated to provide a telephone and directories to a driver if the driver's statements are unclear and there is not an express request to contact an attorney. *State v. Slette*, 585 N.W.2d 407, 410 (Minn. App. 1998). The officer is only required to clarify the driver's request. *Id.* If a driver refuses to respond when offered an opportunity to contact an attorney, the officer is not obligated to do anything beyond advising the driver of his limited right to counsel. *See Busch*, 614 N.W.2d at 259.

"[T]he implied-consent law imposes on a driver a requirement to act in a manner so as not to frustrate the testing process." *Collins*, 655 N.W.2d at 658. When a driver is

5

disruptive to the implied-consent procedure, or refuses to respond to the officer's questions, he may be deemed to have waived his right to consult with an attorney and to have refused testing. *Id.*; *Busch*, 614 N.W.2d at 259.

Here, appellant argues that the district court erred in concluding that his right to counsel was vindicated because Trooper Casey did not provide him with a telephone and directories and stated, "I'm guessing talking to an attorney right now is not really going to be beneficial to you." Appellant also asserts that he did request an attorney during his interaction with Trooper Casey. Appellant argues that because his right to counsel was violated, all evidence gathered during the implied-consent procedure should have been suppressed.

However, as evidenced in the recording of the implied-consent advisory, appellant never affirmatively requested an attorney. After the first reading of the advisory, Trooper Casey asked appellant four times whether he wanted to speak with an attorney before he stated somewhat clearly that it was "probably the best thing." Trooper Casey then asked him twice whether he would use a telephone to call an attorney if she retrieved one, and appellant responded by shaking his head, "no." Trooper Casey went on to read the advisory to appellant a second time and asked him an additional four times whether he wished to speak with an attorney. Appellant did not provide clear responses. She also asked him again if he could use a telephone and directories if they were provided, and he responded by saying, "No, know I'm drunk."

Upon reviewing this recording, much of which consists of appellant mumbling, as well as the testimony presented at the hearing, the district court concluded that appellant

was evasive and unwilling to give a definitive answer regarding whether he wished to consult with an attorney, despite having the capacity to do so.

The district court also concluded that Trooper Casey's comment regarding whether contacting an attorney would be beneficial to appellant was related to appellant's "physical and mental condition," and to comments that he made regarding his mental state. Additionally, a short time after making that statement, Trooper Casey re-read the implied-consent advisory and twice more asked appellant if he wished to contact an attorney. The district court concluded that Trooper Casey's statement did not deter appellant from exercising his right to counsel. We agree.

Through his actions and refusal to directly answer Trooper Casey's questions, appellant frustrated the testing process and waived his limited right to counsel. *See Collins*, 655 N.W.2d at 658; *Busch*, 614 N.W.2d at 259. Appellant was afforded a reasonable opportunity to consult with an attorney, but declined to do so. Furthermore, by reading appellant the implied-consent advisory twice, and by attempting to get him to make a decision about contacting an attorney, Trooper Casey fulfilled her duty to vindicate his limited right to counsel. *See Busch*, 614 N.W.2d at 259. Under the totality of the circumstances, Trooper Casey fulfilled her obligation to vindicate appellant's right to counsel. *See id.*; *Groe*, 615 N.W.2d at 841. The district court did not err in denying appellant's motion to suppress the evidence gathered during the implied-consent procedure.

7

**II.     Appellant's test-refusal conviction violated his substantive due-process rights.**

Relying on *State v. Trahan*, 870 N.W.2d 396 (Minn. App. 2015), *review granted* (Minn. Nov. 25, 2015), and *State v. Thompson*, 873 N.W.2d 873 (Minn. App. 2015), *review granted* (Minn. Feb. 24, 2016), appellant argues that his conviction for test refusal must be reversed because the test-refusal conviction violated his constitutional due-process rights. This court reviews the constitutionality of a statute de novo. *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007). "Minnesota statutes are presumed constitutional[,] and . . . our power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). "[T]he challenger bears the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn. 1990).

Under the circumstances presented in this case, where appellant refused to submit to a chemical test of his blood or urine, and where there is no exception to the warrant requirement, *Trahan* and *Thompson* are dispositive, and appellant's test-refusal conviction must be reversed.

In both *Trahan* and *Thompson*, this court concluded that, because the state did not assert a valid exception to the warrant requirement, any warrantless blood or urine test conducted would have been an unreasonable search. *Trahan*, 870 N.W.2d at 403; *Thompson*, 873 N.W.2d at 879. This implicated the drivers' fundamental rights under the Fourth Amendment. *Trahan*, at 870 N.W.2d at 404; *Thompson*, 873 N.W.2d at 879. Because a fundamental right was implicated, the test-refusal statute was subjected to

8

strict scrutiny. *Trahan*, 870 N.W.2d at 404; *Thompson*, 873 N.W.2d 879-80. Under this analysis, we concluded that although the state's interest in highway safety was compelling, the refusal statute was not narrowly tailored to serve that interest. *Trahan*, 870 N.W.2d at 404; *Thompson*, 873 N.W.2d at 880.

Here, appellant argues that, like in *Trahan* and *Thompson*, there was no exigency to justify a warrantless search of his blood or urine. The state does not dispute this assertion and instead argues that a warrantless search would have been justified under the consent exception to the warrant requirement, or that it would have been a reasonable search. However, appellant did not consent to a chemical test, so the consent exception cannot apply. Under *Trahan* and *Thompson*, a warrantless chemical test of a driver's blood or urine is not a reasonable search without a valid exception to the warrant requirement.

The lack of an applicable exception to the warrant requirement places this case squarely under *Trahan* and *Thompson*. Because a warrantless search of appellant's blood or urine would have implicated his Fourth Amendment rights, the refusal statute, as applied, unconstitutionally violates his substantive due-process rights. Appellant's test-refusal conviction must be reversed.

III. **The district court did not abuse its discretion in allowing the jury to hear evidence concerning appellant's test refusal.**

Appellant also challenges his conviction for driving while under the influence on the ground that any evidence gathered by Trooper Casey during the implied-consent

9

procedure should not have been presented to the jury. Appellant argues that the evidence was prejudicial and demands a new trial on the driving-while-under-the-influence charge.

Appellant argues that the district court's failure to suppress the evidence gathered during the implied-consent procedure constituted a constitutional error and that the appropriate standard of review here is harmless error. *State v. Kuhlmann*, 806 N.W.2d 844, 850 (Minn. 2011) ("Generally, most constitutional errors are reviewed for harmless error."). But appellant does not challenge the district court's pretrial decision regarding suppression of the evidence; rather, he points to the prejudicial effect that admission of the evidence had on the jury at trial. Appellant argues that the evidence prejudiced the jury in regards to the driving-while-under-the-influence charge, and that test-refusal evidence should not be admissible in a driving-while-under-the-influence prosecution. This is an evidentiary issue rather than a constitutional issue, and the appropriate standard of review is whether the district court abused its discretion in admitting the evidence. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). Under this standard of review, "the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *Id.*; *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009).

Appellant argues that the refusal evidence was prejudicial on the driving-while-under-the-influence charge because it improperly bolstered the state's circumstantial case on the element of impairment. However, Minnesota law explicitly allows the state to submit evidence of a test refusal in a driving-while-under-the-influence prosecution. *See* Minn. Stat. § 169A.45, subd. 3 (2014) ("Evidence of the refusal to take a test is

10

admissible into evidence in a prosecution under section 169A.20 (driving while impaired).").  Minnesota law also expresses a broad intent to allow admission of "other competent evidence bearing upon" a driver's impairment, which would include Trooper Casey's observations during administration of the implied-consent advisory.  *See id.*, subd. 4 (2014).

Additionally, in order to obtain a conviction for driving while under the influence, the state is required to prove beyond a reasonable doubt that the driver was "under the influence of alcohol."  Minn. Stat. § 169A.20, subd. 1(1) (2014); 10 *Minnesota Practice*, CRIMJIG 29.02 (2006).  Evidence of Trooper Casey's observations of appellant during the implied-consent advisory are certainly relevant and probative on the issue of impairment.  Appellant has not established that the refusal evidence was improperly prejudicial or should have been excluded at trial for some other reason.

The district court did not abuse its discretion when it allowed the state to present the evidence gathered during the implied-consent procedure to the jury, and appellant was not denied a fair trial due to its admission.  Appellant is not entitled to a new trial on the driving-while-under-the-influence charge.

**Affirmed in part and reversed in part.**